## CIRCUIT COURT OF FAIRFAX COUNTY

Cubic Toll Systems, Inc.

v.

Virginia Department
of Transportation et al.

May 3, 1993

Case No. (Chancery) 128973

BY JUDGE THOMAS S. KENNY

After a careful review of the submissions by each party and consideration of the oral arguments heard last Thursday, I have decided to enter the preliminary injunction requested by Cubic in this matter.

When deciding whether or not to enter a preliminary injunction in the early stages of a case, courts are to consider four factors: the likelihood of success on the merits; whether the petitioner is likely to suffer irreparable harm if the injunction is denied; whether the petitioner has an adequate remedy at law; and whether the benefit to be realized by the petitioner outweighs the harm to be suffered by the respondent. *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 193 (4th Cir. 1977).

Neither side has persuaded me yet that it is entitled to prevail on the merits of the case. I cannot say that Cubic's likelihood of success on the merits is so low as to justify a denial of the preliminary injunction nor so high as to demand its award. When this factor, the likelihood of success, is thus inconclusive, the remaining factors to be considered by the court assume proportionally greater importance. *Dan River, Inc. v. Icahn*, 701 F.2d 278, 283 (4th Cir. 1983).

If the injunction is denied and the contract is let to Kiewit, petitioner will almost certainly be precluded from participating in the contract at a later date. Mr. Hayes [defense counsel] took the position on oral argument that once the contract is let, the sole remedy available to this court, if I find

the Department's procedures to have been fatally flawed, is to make a finding that the Department acted arbitrarily and capriciously. After that, it would be solely up to the Commissioner to decide whether to unilaterally terminate the contract, thereby exposing the Department to the threat of extended litigation by Kiewit, and reopen the bidding, thereby exposing the Department to the possibility that none of the new bids will be as favorable or timely as Kiewit's. It strains credulity to believe that he would do this. I have already indicated that I will not order the Department to award the contract to Cubic on the basis of its current submission, but I believe that Cubic and all the other bidders are entitled to know that they are playing on a level field. The purpose of this injunction is to keep the field open until it can be determined whether or not it is level.

As for Cubic's remedy at law, I have not yet been shown any authority under Virginia procurement law to indicate that Cubic would even be entitled to recover its bid proposal costs, much less its "lost" profits. I agree with Mr. Hayes that the concept of profit on a cutting edge, fixed cost contract is speculative, so even if Cubic were entitled to lost profits, there would be no way to determine what those would be. In and of itself, this points out the inadequacy of Cubic's remedy at law.

Finally, the court must balance the equities between the parties and determine whether the harm to the respondent outweighs the benefit to the petitioner if I award the injunction. The Department attempts to stake out the moral high ground on this argument by claiming that it is a matter of public safety to eliminate the need for stopping at toll booths. I have no doubt that there would be fewer accidents on the Dulles Toll Road if there were no toll booth backups, but I find it difficult to see how safety would be increased by allowing forty percent of the traffic to fly through at 55 miles an hour, while requiring the remaining vehicles to stop. Notwithstanding Mr. Hayes's assurances during oral argument that these cars would be safety segregated, I note in the RFP that all lanes are to be equipped for Fastoll, with variable message signs to alert drivers to a particular lane's status at any point in time. In short, I do not believe at all that Fastoll is a safety enhancement; it is a "throughput" enhancement, and no evidence has been offered that an additional six weeks or so of current throughput capability will do serious damage to the Department's mission.

Some of the Department's other arguments concerning the harm it may sustain if the injunction is granted are more weighty. There is a cost associated with delay, both in the lost revenues resulting from the current

security system and in the likelihood of encountering winter weather delays due to a late start. I recognize these as legitimate concerns, but I believe that they are purely monetary and, accordingly, would be compensable through damages.

That brings me to the issue of a bond. The Department has asked for $7,000,000, mainly on the grounds that if it cannot take up the Kiewit offer, it may cost it an additional five million dollars to accept one of the other offers. In other words, if I find that the Department broke the law by accepting a non-compliant offer, I must award to the Department the incremental cost of accepting a compliant one. I decline the invitation to do so.

I will require a bond sufficient to compensate the Department for the lost revenues associated with the current system, plus the rental on the current equipment. No offer was made of what the potential costs would be for delay of the project due to winter weather. The bond amount will be $250,000.

The order presented by Mr. Folk was basically satisfactory, except that it precluded the Department from doing any work on the Fastoll project. That is an overly broad restriction. The only restraint should be on letting the contract. I have amended the order accordingly.